This action by Shelby Jean Parr against Frances Godwin and the Luverne Bank Trust Company seeks to determine the ownership of funds previously located in a checking account in the Bank. The account was entitled "C.M. Kelley or Frances Godwin." Claimants to the fund are Parr, individually and as executrix of the estate of C.M. Kelley, deceased, and Godwin, as the alleged survivor of a joint account with right of survivorship. The trial court ordered that the proceeds be paid to Godwin. Parr appeals. We affirm.
 FACTS
On March 23, 1983, Charles Moody Kelley decided to change an existing individual checking account at the Bank into a joint checking account by adding the name of Frances Godwin to a signature card. The front of the form reflected the offering of eleven different kinds of accounts. The terms and conditions of each kind of account were found on the back side of the agreement.
Designation of the proper kind of account was accomplished by placing an "X" in a box to the left of the name of the kind of account requested. No such designation of the kind of account was made on the agreement, which is the basis of this lawsuit. Evidence during trial tended to show absence of designation as a mistake on the part of the Bank's personnel.
Testimony of Mildred Martin, a teller at the Bank, reflects that in March 1983 the decedent went to the Bank and requested that a second party's name be placed on his checking account. She stated that the Bank's tellers do not ordinarily open new accounts. She explained to the decedent that by having an "or" account, the money in the account would go to the second party named if anything should happen to him. She also told him that the second party could come in the Bank and make withdrawals on the account just as he could. The decedent indicated that this was what he wanted. He told the teller that he had left other money to relatives and that he wanted the person whose name appeared with his on the signature card to have the money in the account. The teller typed the agreement so that the names of the decedent and Frances Godwin appeared on its face. Thereafter, the decedent returned the agreement to the Bank, properly signed by both parties.
The Bank's teller testified that the signature card form used for the account was new to the Bank when the account was established. She stated that decedent's account was the first occasion on which she used the new form. She admitted her mistake in failing to mark the kind of account on the card, and stated that, but for this oversight, she would have marked the account "joint with survivorship," based on the conversation she had with the decedent.
The assistant bookkeeper at the Bank testified that prior to March 1, 1983 (the time the new signature card forms went into effect), any time more than one name *Page 131 
appeared on a signature card, the account was one held jointly with right of survivorship. She further stated that she knew of no joint accounts without survivorship rights held by the Bank.
The bookkeeper testified that the Bank attached no significance to the fact that Godwin's name did not appear on the checks or on the bank statements. She related that such was common practice.
A third witness, Mr. Goray, testified that he and the decedent had worked together closely for fifteen to seventeen years and that he had known the decedent since 1961. Goray said that he and the decedent were very close friends. He further stated that the decedent considered his relationship with Godwin to be very close and that, at one time, probably in 1982, Godwin and the decedent had been engaged to be married. The record reflects that the decedent told Goray, "Lamar, I will never love any woman but that one around there," and pointed to where Mrs. Godwin worked. Goray testified that the decedent told him that he had put Godwin's name on a checking account. Goray understood that the reason for the decedent's establishment of the account was his gratitude for Godwin's care of him during a previous illness.
C.M. Kelley died September 7 or 8, 1983. On or about September 16, 1983, Godwin withdrew all funds from the checking account. Appellant Shelby Jean Parr was later appointed executrix of Kelley's estate by the Probate Court of Crenshaw County.
Parr, the principal beneficiary under decedent's will, filed a complaint in the Circuit Court of Crenshaw County, Alabama, claiming the sum of $14,370 for money had and received (Count I); for conversion (Count II), as to Defendant Frances Godwin; for money had and received (Count III); and for breach of checking account agreement (Count IV), as to Defendant Bank. The complaint alleged that the decedent had a checking account deposit at the Bank in his name without survivorship; that such funds were owned by him; that Godwin withdrew the entire balance in the account on September 16, 1983, when both Defendants had notice of Kelley's death prior thereto; and that the Bank permitted the withdrawal in breach of its deposit agreement.
The trial court heard the case without a jury and entered judgment for the Defendants.
 DECISION As to Defendant Bank:
The liability of Defendant Bank is governed by Code 1975, §5-5A-41. The statute is drafted in terms which exempt the Bank from liability for its payment of a joint account to the survivor:
"[I]rrespective of whether or not:
 (1) the form of the deposit or deposit contract contains any provision of survivorship. . . ."
We interpret this provision to mean that the Bank is not liable for its payment of the entire amount in the account to Godwin on September 16, 1981.
 As to Defendant Godwin:
Although § 5-5A-41 exempts the Bank from liability, it does not empower the bank to determine ownership of a joint account in its depository. Jones v. Jones, 423 So.2d 205 (Ala. 1982). Title is determined in accordance with the intentions of the parties "stated in the instrument creating such tenancy," pursuant to Code 1975, § 35-4-7.
The only word used in the checking account agreement in the instant case from which one might infer the creation of a joint tenancy with right of survivorship is "or." Therefore, at first glimpse, it appears that this Court's holding in Farmer v.Farmer, 455 So.2d 1 (Ala. 1984), should be controlling; however, that case may be distinguished on its facts.
The primary issue in Farmer was the determination of the rightful payees of a promissory note. Appellant argued that, because the note was payable on its face to "Clyde E. Farmer,or Grace Farmer, or Charles Edgar Farmer" (emphasis added), *Page 132 
there was evidence of intent that the note be held in joint tenancy with right of survivorship. This Court refused to accept the argument and quoted its holding in Ex parte Lovett,450 So.2d 116, 117 (Ala. 1984):
 "As between the claimants to the proceeds, here, the administratrix of the estate of Mrs. Spruell, Mrs. Uptain on the one hand, and Mrs. Lovett on the other, § 35-4-7, Code [1975], is the controlling statute with regard to Mrs. Lovett's claim to the proceeds as a joint tenant with right of survivorship. Title to personalty by that act is determined in accordance with the intention of the parties `stated in the instrument creating such tenancy.' Nothing in the evidence suggests that a joint tenancy with right of survivorship was intended. That being so, Mrs. Lovett is not entitled to the entire fund, because the certificate of deposit did not create a survivorship estate in her."
Both Farmer and Lovett can be distinguished from this case, because in each of those cases the instrument at issue was complete on its face. Therefore, there existed no reason for the admission of parol evidence. To the contrary, here, we have an instrument that is not complete on its face.
No one designated the proper kind of account on the front of the instrument. Thus, the instrument is incomplete and therefore ambiguous. We have two alternatives in this case. We may discard the contract as void for its incompleteness, or we may accept the contract as incomplete and allow parol evidence to clarify the ambiguity. Because of the obvious intent on the part of the decedent to execute the contract as a completed document, we hold that the ambiguity created by the incompleteness is subject to clarification and being made certain by parol evidence.
In our consideration of the issue of admission of parol evidence to explain the incomplete instrument, the case of PortCity Construction Co. v. Henderson, 266 So.2d 896, 48 Ala. App. 639
(1972), is persuasive. There, the Court of Civil Appeals found no error in the trial court's allowing parol evidence of consistent additional terms and of facts and circumstances surrounding the formation of a contract, where the contract was ambiguous, lacked clarity, and did not include all the terms necessary for construction.
The fundamental determination in the legal construction of contracts is the real intention of the parties. 17 C.J.S.Contracts § 49 (1963). The primary rule of construction is that the court must, if possible, ascertain and give effect to the common intention of the parties, so far as that may be done without contravention of legal principles, statutes, or public policy. C.J.S., Id., at 48.
In Lovett, supra, the evidence reflected a certificate of deposit carried on the bank's records in the names of Cora Spruell or Betty Lovett. This Court found nothing in the evidence to suggest that a joint tenancy with right of survivorship was intended. Contrary to the evidence in Lovett, here, we have evidence of an inter vivos gift. See, for example, Dempsey v. First National Bank of Scranton, 359 Pa. 177, 58 A.2d 14 (1948), involving a joint account where the Court held that the proof of the decedent's signature and the offering of the signature card into evidence was prima facie evidence of a gift.[1] In the case at bar, the evidence suggests that decedent's executed signature card, when clarified by parol evidence, expresses an intent to create a joint tenancy with right of survivorship.
 CONCLUSION
Luverne Bank Trust Company is not liable to the plaintiff in this action, because of the operative effect of Code 1975, §5-5A-41. As to the liability of Godwin, we look first to the instrument which established *Page 133 
the joint account entitled "C.M. Kelley or Frances Godwin." Because the signature card is incomplete, parol evidence has been allowed to explain the intent of the party in creating the instrument. Evidence reflects a mistake on the part of Bank personnel in failure to mark the appropriate box on the card indicating an account held jointly with right of survivorship.
Central to our holding is the fact that the signature card was not intended to have any operative effect apart from the marking of an appropriate box indicating the nature of the account. It is this incompleteness of the writing that creates the ambiguity, to which the parol evidence speaks, that distinguishes this case from Farmer and Lovett. Because of the parol evidence, and because this is purely a factual issue, we cannot say that the trial court erred in holding that all the funds in the joint checking account belong to Frances Godwin.
The decision of the Circuit Court of Crenshaw County is affirmed.
AFFIRMED.
ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, FAULKNER and SHORES, JJ., dissent.
[1] For other cases on this point, see Inwood v. Nilsson,96 Ill. App.2d 272, 238 N.E.2d 277 (1968), and First National Bank Trust Co. of Fargo v. Green, 66 N.D. 160, 262 N.W. 596
(1935).