Conference America, Inc., petitions for a writ of mandamus directing the trial court to vacate its order compelling arbitration of its claims against NCI Information Systems, Inc., and its employee, James Tindell (collectively, "NCI"). Conference America maintains that arbitration is inappropriate because its claims, though related to a prior contract that did contain an arbitration clause, directly arise from a subsequent contract that did not contain an arbitration clause. The subsequent contract clearly stated that it constituted the "entire agreement" between the parties. We grant the petition.
 I.
In February 1996, Conference America entered into its first contract with NCI (the "February Contract"). The February Contract provided that NCI was to perform a detailed analysis of Conference America's business and to develop and present to Conference America a "System Engineering Design" plan and a "Software Developmental Plan" (collectively, the "Plans"), for $8,190. The February Contract included an arbitration clause, which stated:
 "[A]ll claims, disputes, controversies and other matters in question between the parties arising from or relating to this Agreement, which cannot be resolved through consultation and negotiation, shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association in effect at the time arbitration is demanded."
(Emphasis added.) NCI completed the February Contract to Conference America's satisfaction, and Conference America paid NCI in full.
In April 1996, after NCI had completed its analysis of Conference America's business and had developed the Plans, Conference America entered into a second contract with NCI (the "April Contract"), in the form of a purchase order.[1] The April Contract was separate and distinct from the February Contract; it provided that NCI would perform the extensive work necessary to implement the Plans, in exchange for $223,210. Each of the Plans was expressly incorporated into the April Contract. The April Contract did not include an arbitration clause. It did, however, include an "entire agreement" clause, which provided in pertinent part:
 "Acceptance of this purchase order shall be unqualified, unconditional and subject to and expressly limited to the terms and conditions hereon. We shall not be bound by additional provisions at variance herewith that may appear in your quotation, acknowledgement, invoice or any other communication from you to us unless such a provision is expressly agreed to in a writing signed by us. Our acceptance or payment for material shipped shall constitute acceptance of such material subject to the provisions herein, only, and shall not constitute acceptance of any counterproposal *Page 955 
submitted by you not otherwise accepted in a writing signed by us. Upon acceptance this purchase order shall constitute the entire agreement between us and may not be modified or rescinded except by a writing signed by both of us."
(Emphasis added.) NCI did not complete the April Contract to the satisfaction of Conference America, and Conference America did not pay NCI in full for the implementation of the Plans.
In December 1996, Conference America sued NCI, alleging breach of contract and fraud. Specifically, Conference America alleged that NCI had failed to properly implement the Plans and that NCI had misrepresented to Conference America that NCI had the staff expertise to perform the April Contract. The trial court granted NCI's motion to stay the proceeding and compel arbitration. Conference America filed this mandamus petition.
 II.
A writ of mandamus is an extraordinary remedy, requiring the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court. Ex parte Edgar, 543 So.2d 682, 684
(Ala. 1989). Mandamus relief is appropriate when a party has been compelled to arbitrate a claim it did not agree to arbitrate.[2]
Section 2 of the Federal Arbitration Act provides in pertinent part:
 "A written provision in any . . . contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract
or transaction . . . shall be valid, irrevocable, and enforceable. . . ."
9 U.S.C. § 2 (emphasis added). Accordingly, federal law mandates the arbitration of claims encompassed by an arbitration clause that is contained in a binding contract that involves interstate commerce. AT T Technologies, Inc. v.Communications Workers of America, 475 U.S. 643, 649,106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Although federal policy favors arbitration, that policy cannot operate without regard to the wishes of the parties as expressed in the terms of the contract. Mastrobuono v. Shearson Lehman Hutton, Inc.,514 U.S. 52, 56, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).
The terms of the February Contract prove that the parties intended to arbitrate "all claims . . . arising from orrelating to this Agreement." (Emphasis added.) Were this the only language before us, we would have little difficulty concluding that Conference America's claims would be subject to arbitration. Conference America's claims concern the proper implementation of the Plans that NCI produced pursuant to the February Contract. Thus, the subject matter of Conference America's claims concerning the implementation of the Plans clearly "relates to" the February Contract under which NCI produced those Plans. See Reynolds Reynolds Co. v. KingAutomobiles, Inc., 689 So.2d 1, 3-4 (Ala. 1996) (stating that an "arbitration clause that applies to claims 'arising out of orrelating to' the contract . . . has a broader application than an arbitration clause that refers only to claims 'arising from' the agreement"); see generally Ex parte Gates, 675 So.2d 371,374 (Ala. 1996) (stating that an arbitration clause including the phrase "all disputes . . . arising from or relating to this contract" is very broad).
The February Contract, however, is not the only contract between the parties. The subsequent April Contract, from which the claims directly arise, contains no arbitration clause. Still, absent indications to the contrary in the April Contract, we would hold that Conference America's claims would be subject to the arbitration clause in the February Contract, because of the close relation of the subject matter of both contracts. See *Page 956 J.J. Ryan Sons, Inc. v. Rhone Poulenc Textile, S.A.,863 F.2d 315, 319 (4th Cir. 1988) (holding that where prior agreements contained arbitration clauses, claims arising from subsequent related contracts were subject to arbitration even though the subsequent contracts did not contain arbitration clauses).
The April Contract, however, contains an "entire agreement" clause, which states that the April Contract "shall constitute the entire agreement between us." (Emphasis added.) General canons of contract construction require that "if in its terms a contract is plain and free from ambiguity, then there is no room for construction and it is the duty of the court to enforce it as written." Ex parte South Carolina Ins. Co.,683 So.2d 987, 989 (Ala. 1996). Thus, because Conference America and NCI expressly stated that the April Contract constitutes the "entire agreement" between them, we will enforce the plain meaning of those words by treating the April Contract as the entire agreement between the parties.
Moreover, this Court has specifically applied the plain meaning interpretation of "entire agreement" clauses to determine whether parties agreed to arbitrate claims. InCrown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 618
(Ala. 1997), this Court refused to enforce an arbitration clause that was included in a preliminary handwritten "buyer's order form" contract, because the final contract expressly excluded consideration of all terms not set forth in that contract. This Court held that the final contract constituted the entire agreement between the parties. Id.; accord, e.g., Lakehead PipeLine Co. v. Investment Advisors, Inc., 900 F. Supp. 234, 236
(D.Minn. 1995) (recognizing that arbitration clause in first contract was negated by "entire agreement" clause of the second contract with respect to claims arising out of the second contract). Thus, the "entire agreement" clause in the April Contract negated the effect of the arbitration clause in the February Contract with respect to claims arising out of the April Contract.
Conference America and NCI did not agree to arbitrate claims arising out of the April Contract. They did not include an arbitration clause in the April Contract. They did not expressly or by implication incorporate the February Contract and its arbitration clause into the April Contract. See BenCheeseman Realty Co. v. Thompson, 216 Ala. 9, 12, 112 So. 151,153 (1927) (stating that where a contract contains references to other documents, those documents are incorporated into the contract). Instead, the parties agreed that the April Contract, in which they included no arbitration clause, was the "entire agreement." Therefore, the trial court erred in ordering arbitration of Conference America's claims regarding the implementation of the Plans.
Conference America has demonstrated a clear legal right to the order sought. The trial court is directed to vacate its order compelling Conference America to arbitrate its claims against NCI.
WRIT GRANTED.
HOOPER, C.J., and MADDOX, HOUSTON, and LYONS, JJ., concur.
ALMON, SHORES, KENNEDY, and COOK, JJ., concur in the result.
[1] The parties agree that the purchase order and its attachments constitute a binding contract. See Kennedy v. Polar-BEK BakerWildwood Partnership, 682 So.2d 443, 446 (Ala. 1996) (stating that the essential elements for a contract are an agreement, consideration, two or more contracting parties, a legal object, and capacity).
[2] A petition for the writ of mandamus is the generally accepted method of review when the trial court grants a motion to compel arbitration. Ex parte Alexander, 558 So.2d 364, 365 (Ala. 1990). A direct appeal is the generally accepted method of review when a trial court denies a motion to compel arbitration. A.G.Edwards Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala. 1990).